NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MATTHEW MICHAEL ROBINSON, *Petitioner/Appellant*,

*v.*

AMY MARIE ROBINSON, *Respondent/Appellee*.

No. 1 CA-CV 25-0059 FC

FILED 06-10-2026

Appeal from the Superior Court in Maricopa County
No. FC2023-050265
The Honorable Andrew J. Russell, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Rose & Associates, PLLC, Phoenix
By Timothy J. Rose
*Counsel for Petitioner/Appellant*

Amy Marie Robinson, Scottsdale
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

---

**K I L E Y**, Judge:

**¶1**        Matthew Michael Robinson ("Father") appeals from portions of the decree of dissolution (the "Decree") dissolving his marriage to Amy Marie Robinson ("Mother"). For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Mother and Father married in 2012 and have three minor children. During the marriage, Mother worked as an emergency room trauma nurse while Father was a stay-at-home parent. They lived rent-free in a house in Scottsdale owned by Father's grandparents.

**¶3**        Father filed a petition for dissolution of marriage (the "Petition") in January 2023. The following day, Mother sought and obtained an order of protection (the "OOP") barring Father from having contact with her. Father moved out of the marital residence and then requested a hearing to challenge the OOP. When Mother failed to appear for the hearing, the court dismissed the OOP.

**¶4**        Father did not return to live in the former marital residence after the OOP was dismissed. Instead, he moved into a one-bedroom casita located on the premises of his grandparents' own home. Meanwhile, Mother continued to live at the former marital residence with the children.

**¶5**        Father's grandparents evicted Mother from the former marital residence in June 2024. Although the record is not clear, it appears that Mother moved to Lake Havasu City on at least a part-time basis after accepting a job there. Meanwhile, the children remained with Father, who obtained full-time employment.

**¶6**        In December 2023, Father moved for temporary orders, asking that he be granted sole legal decision-making authority ("LDM") for the children and be designated their primary residential parent. He also asked that Mother be ordered to pay him child support.

¶7        At a temporary orders hearing in January 2024, the court awarded the parties joint LDM and ordered that the children live primarily with Father, with Mother having non-overnight parenting time two days during the week and on alternate weekends. The court also ordered Mother to pay Father temporary child support of $1,000 per month beginning the following month.

¶8        The court set trial in November 2024, and entered orders setting deadlines for discovery and the filing of pretrial statements. As ordered, Father filed a pretrial statement identifying his positions on the issues in dispute. Mother, by contrast, filed nothing before trial.

¶9        At the beginning of the trial, the court noted that Mother had not filed a pretrial statement and asked her to state her positions on the disputed issues. Mother responded, "I don't know," adding, "I just want it over."

¶10        Father testified about difficulties he had communicating with Mother during the proceedings, stating that she did not timely respond to text messages that he sent her. He further stated that he attempted to enroll the children in counseling to help them adjust to their parents' divorce, but was unable to do so due to Mother's failure to cooperate in the enrollment process. He also asked that the parties continue to share joint LDM, but that he be granted final decision-making authority in the event that they were unable to reach agreement. When asked, "[a]re you specifically making that request because you need to get your kids into counseling right away?", Father answered, "Yes." He also requested an "equal time" parenting schedule.

¶11        Father then testified about marital assets and debts. As relevant here, he stated that during the proceedings he sold two vehicles belonging to the marital community, a Volkswagen and a BMW, which together were valued at roughly $7,000, to pay living expenses for himself and the children.[1] He further testified that Mother had two bank accounts in her name during the marriage, one with Bank of America ("B of A") and one with Chase Bank ("Chase"). Father stated that Mother disclosed nothing about the B of A and Chase accounts during the proceedings, and that he did not know the balance of those accounts. He proposed, therefore, Mother be awarded the B of A and Chase accounts, and that the unknown balances of those accounts be treated as an offset against the $7,000 value of

---

[1] Although Father presented evidence of their Kelley Blue Book value, he did not testify about the actual sales price of either car.

the two cars he sold, with neither party making an equalization payment to the other.

¶12 Father also presented evidence that Mother had a retirement account with a former employer, Dignity Health Services ("Dignity"), with a balance of $16,475.82 in January 2023, that the account belonged to the marital community, and that, during the proceedings, Mother liquidated the account and kept the proceeds. He requested an equalization payment of roughly $8,200 for his share of the funds in the account.

¶13 Father testified that he earned $19.33 an hour. He also presented copies of the parties' income tax returns for the years 2018 through 2022. Upon questioning by the court, Father testified that he paid his grandparents $600 per month as rent for the casita where he and the children lived.

¶14 Mother did not testify about her income, nor did she submit an Affidavit of Financial Information ("AFI"). Father submitted Mother's employment contracts with two different employers in 2023 and 2024 reflecting that she was paid roughly $41 an hour.

¶15 Mother testified that she had been living rent-free in the former marital home until Father's grandparents evicted her in June 2024. After that, she testified, she rented an apartment for $2,250 per month.

¶16 Mother admitted that she did not pay temporary child support as ordered by the court until August 2024, and further admitted that she did not provide Father any support between service of the Petition and the temporary orders hearing.

¶17 After taking the matter under advisement, the court issued the Decree setting forth its findings. Citing A.R.S. § 25-403.01, the court found that "Mother's lack of agreement" on LDM issues "[was] unreasonable" and that "[h]er failure to participate" in the proceedings "thwarted any possible resolution." The court nonetheless found "[n]o evidence" to "suggest[] that either party makes decisions contrary to the children's best interests[,]" and so awarded the parties joint LDM, with Father having final decision-making authority limited solely to issues relating to the children's counseling. The court further awarded the parties equal parenting time.

¶18 The court found that Mother earned $41 per hour. The court rejected Father's contention that he earned only $19 per hour, noting that his "grandparents are essentially subsidizing his income" by charging him

$600 for rent and utilities, an amount which, the court opined, was "far below the market rate[.]" Noting that Mother testified that she paid monthly rent of $2,250 for her apartment, the court attributed the same amount of income to Father on the assumption that the figure represents the fair rental value of the casita where Father lived. Determining that Father's income was $5,500 monthly (based on his $19-per-hour income plus the purported value of his living accommodations), the court ordered Mother to pay Father child support in the amount of $379 per month using a Child Support Worksheet. Further, the court denied Father's request for an award of spousal maintenance.

**¶19** The Decree noted that during the proceedings Mother liquidated her Dignity Health retirement account while Father sold the Volkswagen and the BMW. The Decree made no mention of the B of A and Chase accounts that Mother liquidated during the proceedings, nor did it order either party to make an equalization payment to the other.

**¶20** Finally, the court ordered that Mother pay Father $3,000 in attorney fees. The court found that the parties had "similar financial resources" and thus did not award fees on that basis. *See* A.R.S. § 25-324. However, the court found that Mother had acted "unreasonably in the litigation[,]" and awarded Father $3,000 to "reimburse [him] for the attorneys' fees he incurred as a result of [Mother's] unreasonable actions and positions[.]"

**¶21** Father timely appealed. Father then moved to stay the appeal in order to allow the superior court to amend the judgment to include final language under Arizona Rule of Family Law Procedure 78(c). We granted the stay, and the superior court subsequently amended the judgment. We lifted the stay, and this appeal followed.

**¶22** We have jurisdiction pursuant to A.R.S. §§ 12-2101(A) and 12-120.21(A).

## DISCUSSION

**¶23** Father raises various challenges to the Decree, while Mother asks us to affirm the Decree "in all respects."

I. **Imposition of Time Limits**

**¶24** The order setting the November 2024 trial included the notation, "time allotted: 3 hours." At the beginning of trial, however, the superior court stated, "Each side will have an hour." When Father's counsel

clarified, "One hour?", the court stated, "Yes." Father's counsel did not protest, or ask for additional time.

¶25    After Mother completed her direct examination, the court asked Father's counsel, "[A]nything else for today?" Counsel replied that he had "[j]ust a couple of quick questions[.]" He proceeded to cross-examine Mother at some length about her failure to pay temporary child support and her eviction from the former marital residence. He then turned to Mother's failure to comply with her disclosure and other litigation obligations. When he asked about Mother's purported failure to file a resolution management statement prior to the resolution management conference ("RMC") almost a year earlier, the court interjected to say that counsel's "line of questioning" was "a waste of time" and telling him to "move on." When counsel persisted in this line of inquiry, asking Mother if she mailed him a copy of her RMC statement, the court interrupted and said, "We're done," adding, "Your cross-examination is done." Counsel responded, "All right. Fine." The court then stated it would take the matter under advisement and adjourned.

¶26    Father argues that the superior court erred by "abruptly" ending the trial after only two hours and without giving him a chance to offer rebuttal testimony.

¶27    We review the imposition of time limits for abuse of discretion. *Brown v. U.S. Fid. and Guar. Co.*, 194 Ariz. 85, 91, ¶ 30 (App. 1998).

¶28    A court violates litigants' due process rights by not allowing them an adequate opportunity to present their evidence. *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 21 (App. 2014). But a party that believes it has not had adequate time to present its case must raise a timely objection with the court. Here, Father never objected when the court stated, at the outset, that each party would have one hour to present his or her evidence. The record indicates that Father was, in fact, afforded an hour to present his evidence, and Father does not contend otherwise. When the court indicated that it was preparing to adjourn, counsel stated that he had "just a couple of quick questions" before examining Mother at some length. And when the court announced that it was concluding the proceedings, Father's counsel replied, "Fine." Because Father never objected to the time limits imposed nor requested additional time, he has waived his challenge to the court's time limits on appeal. *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 16 (App. 2010) (rejecting appellant's claim that time limits at trial violated his due process in part because he "did not request additional time"); *see also In re Marriage of Johnson and Gravino*, 231 Ariz. 228, 235, ¶ 25 (App. 2012) ("Absent

extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal because the court and opposing counsel should have the opportunity to correct any asserted errors or defects.").

**¶29**        Moreover, a party who claims on appeal that the trial court erred in excluding evidence must preserve the claim by making an offer of proof. Ariz. R. Evid. 103(a)(2) (the party must "inform[] the court of [the evidence's] substance by an offer of proof, unless the substance was apparent from the context."); *see also State v. Towery*, 186 Ariz. 168, 179 (1996) ("When an objection to the introduction of evidence has been sustained, an offer of proof showing the evidence's relevance and admissibility is ordinarily required to assert error on appeal."). Father never made an offer of proof indicating the additional evidence he would have presented if allowed additional time for rebuttal. Father therefore cannot show prejudice from the time limits imposed at trial, and so is entitled to no relief. *See Gamboa*, 223 Ariz. at 403, ¶ 18 (holding that appellant who "did not make an offer of proof below" failed to establish "that he was harmed as a result of the court's time limitations").

## II.    **Legal Decision-Making**

**¶30**        At trial, Father asked that the court award the parties joint LDM and award him final decision-making authority. The court granted his request in part, awarding the parties joint LDM and granting Father final decision-making authority limited to issues relating to the children's participation in counseling. Father now argues that the court abused its discretion in limiting the scope of his final decision-making authority, asserting that the court failed to conduct a proper analysis of the relevant factors under Section 25-403.

**¶31**        When deciding LDM, the superior court must consider the factors enumerated under Sections 25-403(A) and 25-403.01(B) (collectively, the "403 factors"). This court reviews the superior court's LDM and parenting-time orders for an abuse of discretion. *See Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). An abuse of discretion occurs when the court commits an error of law in reaching a discretionary decision or when the record does not support the court's decision. *Id.*

**¶32**        The Decree reflects that the court considered each of the 403 factors before determining that the parties should continue to share joint LDM, and that Father should be granted final decision-making authority limited only to the children's counseling. Father contends, however, that the court's failure to grant him final decision-making authority on all issues

was inconsistent with its finding of Mother's "unreasonable" litigation conduct.

**¶33** Subsection 1 of Section 25-403.01(B) requires the court to determine "[t]he agreement or lack of an agreement by the parents regarding joint legal decision-making." In the Decree, the court found that "Mother's lack of agreement [was] unreasonable," explaining that Mother's failure to actively participate in the litigation, including by "fail[ing] to communicate with Father's counsel[,] . . . thwarted any possible resolution." According to Father, this finding conflicts with the court's finding that "[n]o evidence suggests that either party made decisions contrary to the children's best interests."

**¶34** We discern no conflict between the two findings. Although the court was of the view that the parties might have reached an agreement on LDM issues prior to trial had Mother engaged more actively in the proceedings, that finding does not compel the conclusion that Mother had made, or would make, any decisions contrary to the children's best interests.

**¶35** Father also contends that the court's finding under Subsection 6 of Section 25-403(A) is "ambiguous." Section 25-403(A)(6) asks the court to consider "[w]hich parent is more likely to allow the child frequent, meaningful and continuing contact with the other parent." In the Decree, the court found that "[b]oth parties are equally likely (or perhaps unlikely) to allow the children frequent, meaningful, and continuing contact with the other parent." Father takes issue with the court's use of the term "perhaps unlikely," suggesting that the term "indicates that the family court may have considered other evidence." Father does not clearly explain his reasoning on this point, and so he has waived the claim. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient.").

**¶36** In his testimony, Father identified no basis for his request for final decision-making authority other than the need to enroll the children in counseling. The court's decision to award the parties joint LDM, with Father having final decision-making authority only on the counseling issue, was consistent with Father's testimony. We therefore reject Father's challenge to the provision of the Decree awarding the parties joint LDM, with Father having final decision-making authority limited to issues relating to the children's counseling.

III.     **Child Support**

A.     **Calculation of Income**

¶37      Father argues that the superior court erred in its determination of each party's income for the purposes of calculating child support.

¶38      "We review child support awards for abuse of discretion." *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 9 (App. 2016). "We accept the court's factual findings unless clearly erroneous but review de novo the court's conclusions of law and interpretation of the Arizona Child Support Guidelines[.]" *Id.* at 113, ¶ 9.

¶39      In support of his position, Father argues, first, that the court abused its discretion in finding that Mother earned $41 per hour.

¶40      To calculate Mother's income, the court used the hourly rate she was paid as reflected in her employment contracts from 2023 and 2024, which Father offered at trial. If Father was of the view that the contracts did not reflect Mother's current income, he could have asked her about her income when she was on the witness stand. He didn't. Although the tax returns and other documents that Father presented indicated Mother had earned more than $41 per hour in the past, the court was within its discretion in relying on the employment contracts as the most probative evidence of her current income.

¶41      Father argues, next, that the court erred by attributing income to him in addition to his earnings from employment.

¶42      When determining a party's income for purposes of calculating a child support award, a court may include "cash-like benefits received by the household which [are] available for expenditures." *Milinovich v. Womack*, 236 Ariz. 612, 616, ¶ 11 (App. 2015). Recurring gifts that a parent receives from family members may, for example, be treated as the parent's income. *See Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994) (holding that trial court did not err in "consider[ing] the money the grandparents regularly and voluntarily gave their daughter" in determining her income for child support purposes).

¶43      But a court's determination of a party's income must be based on evidence in the record. *Milinovich*, 236 Ariz. at 615, ¶ 7 (court abuses its discretion on child support if record is "devoid of competent evidence to support the decision" (citation omitted)); *Pearson v. Pearson*, 190 Ariz. 231,

235 (App. 1997) ("We consider whether sufficient evidence supports the court's conclusions regarding . . . disputed items of imputed income."). Here, the court attributed income to Father based on his rent-free living arrangements, and determined the value of that non-cash income based on the amount of rent Mother pays for her apartment. No evidence in the record, however, supports a finding that their living accommodations are comparable. Because the child support award was calculated based on unsupported assumptions about the rental value of Father's home, it must be set aside and the matter remanded for a redetermination of Father's income. *See Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 185, 190 (App. 1992) (holding that factual finding "based on no evidence is . . . an abuse of discretion").

### B.      Retroactive Support

**¶44**          At the January 2024 temporary orders hearing, the court expressly declined to order temporary child support retroactive to the beginning of the dissolution proceedings. Instead, the court awarded temporary monthly support of $1,000 to begin February 1, 2024, while acknowledging that "at some point there may be a calculation going backwards[.]" The Decree contains no provision for retroactive child support.

**¶45**          Father argues that the court erred in failing to enter a judgment for retroactive child support from the date of service in early 2023 until the temporary support order took effect in February 2024. Whether the superior court was required to award a retroactive support judgment is a legal issue we review *de novo*. *Simpson v. Simpson*, 224 Ariz. 224, 225, ¶ 4 (App. 2010).

**¶46**          If child support is appropriate and has not previously been ordered, Section 25-320(B) requires the court to award retroactive child support. *Id.* at 226, ¶ 10 (App. 2010) (citing A.R.S. § 25-320(B)). The Decree contains no provision for child support from the beginning of the proceedings through January 2024. Because such an award was statutorily mandated, we remand to the superior court to amend the Decree to include a retroactive child support judgment covering the time from service of the

Petition until February 1, 2024, the effective date of the temporary child support order.[2]

### C. Arrears Judgment for Child Support Ordered But Not Paid

**¶47**        At trial, Mother admitted that although the temporary child support order became effective on February 1, 2024, she did not begin to make payments until August 2024. Father argues that the court erred in failing to enter an arrears judgment for unpaid temporary support.

**¶48**        An arrears judgment is appropriate for child support that a parent was ordered to pay but did not. *See Jarvis v. Jarvis*, 27 Ariz. App. 266, 267-68 (1976). When one party is entitled to, and requests, a judgment for arrearages, "the duty of the court to enter judgment under such circumstances is mandatory and not discretionary." *Id.* at 267. Arrearages accrued under temporary orders are extinguished if not included in the final decree. *Valencia v. Valencia*, No. 1 CA-CV 19-0224 FC, 2020 WL 1522820 at *2, ¶ 11 (Ariz. App. Mar. 31, 2020) (mem. decision).

**¶49**        The Decree made no mention of the unpaid temporary support Mother owed for the period from February 1, 2024, until entry of the Decree. Because Mother admitted that she did not pay temporary support as ordered, the failure to include a judgment for the arrearage in the Decree was error. *Jarvis*, 27 Ariz. App. at 267-68. We remand to the superior court to amend the Decree to include a judgment for the arrearage accrued by Mother when she failed to pay temporary child support as ordered.

## IV. Mother's Dignity Account

**¶50**        Father argues that the superior court erred by failing to allocate the parties' interests in Mother's Dignity account.

**¶51**        We review the court's division of community property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). However, "[w]e review the court's classification of property as separate or community" *de novo*. *Id.*

---

[2] As the court acknowledged at the temporary orders hearing, "several different child support calculations" might be required to determine retroactive child support because the children's living arrangements may have changed over this period of time.

**¶52**        With limited exceptions not applicable here, property that is acquired during the marriage is community property subject to division. A.R.S. § 25-211. Retirement plans and savings accounts that are community property are subject to equitable division at dissolution. *See Walker v. Walker*, 256 Ariz. 295, 299, ¶ 12 (App. 2023).

**¶53**        The superior court found that "neither party . . . identified a retirement . . . [p]lan" subject to division. This finding is contrary to the record. Father testified about Mother's Dignity account, and presented an annual statement reflecting that the sum of $16,475.68 was withdrawn from the account on an unspecified date in 2023. Mother never controverted Father's evidence on this point, nor did she dispute that the funds in the account constituted community property. Instead, she stated simply that she liquidated the account at the time of her eviction from the former marital home to pay living expenses. Irrespective of how Mother used the funds, however, Father was entitled to his community interest in them. Father requested an equalization payment of $8,200, but the Decree contains no provision awarding Father any share of the funds in the account. Mother did not contest that the funds in the account were community property, and the court erred in failing to recognize Father's interest in those funds by requiring Mother to make an equalization payment. On remand, therefore, the court must address Father's request for an equalization payment relating to this account.

V.        **Attorney Fee Award**

**¶54**        Father argues that the court erred in finding that "both parties [have] similar financial resources" and refusing to award Father attorney fees on that basis. Father also argues that the court erred by awarding him fees of $3,000 without first "requiring [his] counsel to file a *China Doll* affidavit" so the court could determine "what [fees] Husband actually incurred."[3]

**¶55**        We review an award of attorney fees for an abuse of discretion and will not disturb the superior court's decision "if there is any reasonable basis for it." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004) (citation omitted).

**¶56**        Under A.R.S. § 25-324, the superior court "may order a party to pay a reasonable amount to the other party for the costs and expenses" of a family law proceeding. A.R.S. § 25-324(A). The court may do so "after

---

[3] *See Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183 (App. 1983).

considering the financial resources of both parties and the reasonableness of [their] positions . . . throughout the proceedings[.]" *Id.*

¶57        Here, the superior court found that "there is no substantial disparity of financial resources between the parties[,]" explaining that while Mother earned more income, she paid far more for "rent/utilities" than Father. However, because Mother acted "unreasonably" by "not participat[ing] meaningfully in the[] proceedings[,]" the court awarded Father $3,000 in fees as "reasonable" to "reimburse [Father] for the attorneys' fees he incurred as a result of [Mother's] unreasonable actions[.]"

¶58        Father argues that he was entitled to a fee award of more than $3,000, asserting that Mother not only acted "unreasonably" during the proceedings but earns roughly "three . . . times" his income.

¶59        We addressed a similar claim in *Ferrill v. Ferrill*, 253 Ariz. 393 (App. 2022). The husband in that case asserted that the court abused its discretion in denying his request for attorney fees, arguing that the wife "took unreasonable positions throughout [the] case and earn[ed] at least three times more than he [did.]" *Id.* at 399, ¶ 25. The *Ferrill* court rejected the husband's argument, holding that the court's denial of his fee request was within its discretion. *Id.*

¶60        The court here expressly considered the financial resources of the parties and found no disparity sufficient to warrant a fee award. The court awarded Father a portion of his requested fees because Mother's lack of engagement in the proceedings was "unreasonable[.]" As in *Ferrill*, the court's determination was squarely within its discretion, and we will not disturb its decision.

¶61        Father also contends that the superior court erred in ruling on his fee request without a *China Doll* affidavit. But the filing of a *China Doll* affidavit is not a prerequisite to an award of fees under A.R.S. § 25-324. *McCanless v. McCanless*, No. 1 CA-CV 21-0458 FC, 2022 WL 1151127 at *5, ¶ 30 (Ariz. App. Apr. 19, 2022) (mem. decision) ("[W]e have not held that a *China Doll* affidavit is mandatory to receive fees in a child support or parenting time action."). In any event, Father cannot benefit on appeal from his own failure to file a *China Doll* affidavit. *See, e.g., State v. Lucero*, 223 Ariz. 129, 135, ¶ 17 (App. 2009) ("invited error [doctrine] precludes a party who causes or initiates an error from profiting from the error on appeal"). We therefore reject Father's challenge to the court's $3,000 fee award.

## VI. Judicial Bias

¶62 Father raises vague assertions of judicial bias, noting that the judge made negative comments about the paternal grandparents' decision to evict Mother.

¶63 "A party challenging a trial judge's impartiality must overcome a strong presumption that trial judges are free of bias and prejudice." *State v. Cropper*, 205 Ariz. 181, 185, ¶ 22 (2002) (citation modified). To prevail, the party must prove the judge had "a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants." *In re Guardianship of Styer*, 24 Ariz. App. 148, 151 (1975). The party must do so by "set[ting] forth a specific basis for the claim of partiality and prov[ing] by a preponderance of the evidence that the judge is biased or prejudiced." *State v. Medina*, 193 Ariz. 504, 510, ¶ 11 (1999).

¶64 The transcript reflects that when Mother testified about her eviction, the court expressed surprise that Father remained on good terms with his grandparents after they "evicted" the "mother of [his] children." The court further expressed "sympathy" for Mother, suggesting that she had been "double teamed" by "Father in this case and then by his grandparents in the eviction case." The court's critical comments about the actions of Father's grandparents fall short of the type of showing needed to overcome the strong presumption of the court's impartiality, and so entitle Father to no relief.

¶65 We vacate the portions of the Decree relating to child support and the division of marital assets and affirm in all other respects.

## VII. Attorney Fees on Appeal

¶66 Father requests an award of attorney's fees under A.R.S. § 25-324. Under A.R.S. § 25-324(A), we may award fees taking into account the "financial resources of both parties" and the "reasonableness of the positions each party has taken throughout the proceedings[.]"

¶67 Father asserts that Mother has "acted unreasonably in the litigation." In support of his assertion, he cites Mother's conduct in the trial court proceedings, including her failure to file a pretrial statement and to participate actively in the litigation. But the record before us does not indicate that Mother has acted unreasonably in the appellate proceedings, and Father does not contend otherwise. Further, we agree with the trial court's determination that a fee award is not warranted by a disparity in

the parties' financial resources. We deny Father's request for fees on appeal. He is entitled to taxable costs upon compliance with ARCAP 21.

## CONCLUSION

**¶68** We vacate the child support and marital property provisions of the Decree, affirm the Decree in all other respects, and remand for further proceedings consistent with this decision.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR

15